**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CUTLERY AND MORE, LLC, <br> an Illinois Limited Liability Company, <br><br>         Plaintiff, <br><br>   v. <br><br><br> DASALLA TRADING COMPANY, INC. <br> a California Corporation, <br><br>        Defendant. | Civil Action No. <br><br><br><br><br><br> **Jury Trial Demanded** |

**COMPLAINT FOR TRADEMARK INFRINGEMENT,
UNFAIR COMPETITION, DILUTION, CYBERSQUATTING, DECEPTIVE TRADE
PRACTICES AND CONSUMER FRAUD**

1.  Plaintiff Cutlery and More, LLC ("Cutlery and More") brings this Complaint against Defendant Dasalla Trading Company, Inc. ("Dasalla") for the Defendant's infringement, unfair competition and dilution of Cutlery and More's Federal Registered Mark and common law rights, and cybersquatting, deceptive trade practices and consumer fraud.  Cutlery and More alleges as follows:

**NATURE OF THE ACTION**

2.  This is an action for trademark infringement, unfair competition and dilution pursuant to the Lanham Act, 15 U.S.C. § 1125(a); dilution pursuant to the Illinois Trademark Registration and Protection Act, 765 ILCS § 1036/65 and the common law of the State of Illinois; consumer fraud pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill.Comp.Stat. § 505/1, *et seq.*; and deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 Ill.Comp.Stat. § 510/1, *et seq.* Despite knowledge

of Cutlery and More's use and substantial common law and Federal rights in the CUTLERY

AND MORE trade name and trademark, Dasalla purchased a domain name and used confusingly

similar terms in connection with the identical services in direct competition with Cutlery and

More and in violation of Cutlery and More's rights. Because of the immediate and irreparable

harm caused by Dasalla's improper use of Cutlery and More's mark, Cutlery and More seeks

injunctive relief and damages for Dasalla's illegal and unauthorized acts.

3.     The action results from, *inter alia*, Dasalla's infringement of Cutlery and More's

Federal Registered Mark, CUTLERYANDMORE.COM, U.S. Registration No. 3,954,102 (see

Exh. 1) through Dasalla's unauthorized use of the term CUTLERYANDBEYOND on Dasalla's

web site, as a domain name, and in advertising in connection with on-line and retail services, and

its offer to provide such services under the mark in interstate commerce.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 founded

on federal question under the Lanham Act. This Court has jurisdiction over this action pursuant

to 28 U.S.C. § 1332 founded on diversity of citizenship and amount in controversy exceeding

$75,000. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1338(a) and

(b) (patent, trademark and unfair competition). This Court has jurisdiction over Cutlery and

More's related common law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).

5.     Venue and personal jurisdiction are proper in the Northern District of Illinois

under 28 U.S.C. § 1391, since, *inter alia*, a substantial part of the events or omissions giving rise

to the claim occurred here, Dasalla is doing business in this District, and Dasalla has advertised

and promoted its on-line and retail services on its website in this District, and provided services

in connection with the CUTLERYANDBEYOND mark in this District.

**THE PARTIES**

6.      Cutlery and More is a Limited Liability Company organized and existing pursuant to the laws of the State of Illinois.  Cutlery and More has a principal place of business located within this District at 135 Prairie Lake Road, East Dundee, Illinois 60118.  Cutlery and More is in the business of, *inter alia*, providing on-line retail store services featuring cutlery, cookware, kitchen items and accessories.  Cutlery and More provides a necessary service to those individuals that have a need for cutlery, cookware, kitchen items and accessories.  Cutlery and More provides its services under its Federal Registered Mark CUTLERYANDMORE.COM and common law marks.  Cutlery and More has continuously used its mark in connection with its services since as early as August 2, 1999.

7.      Upon information and belief, Defendant Dasalla is a California Corporation having a principal place of business at 828 N. Victory Boulevard, Burbank, California 91502.  Dasalla provides services that are identical to those provided by Cutlery and More including through links to internet websites, and has regularly and systematically engaged in business in this District by offering its services to the citizens of Illinois through its website at the domain www.cutleryandbeyond.com.

8.      Dasalla's unlawful acts have occurred in this District and/or are directed to cause, and have caused or will cause, injury to Cutlery and More within this District.

**CUTLERY AND MORE'S VALUABLE MARK**

9.      Since as early as August 2, 1999, Cutlery and More has continuously used its mark CUTLERYANDMORE in connection with on-line retail store services featuring cutlery, cookware, kitchen items and accessories including through its website www.cutleryandmore.com.

3

10.     Since as early as August 13, 2010, Cutlery and More has used a stylized version of its mark for which the United States Patent & Trademark Office issued U.S. Registration No. 3,954,102 on May 3, 2011. (Exh. 1).  Plaintiffs trademark CUTLERYANDMORE.COM is registered in connection with "on-line retail store services featuring cutlery, cookware, kitchen items and accessories thereof".

11.     Cutlery and More has continuously and prominently displayed and advertised the mark CUTLERYANDMORE.COM to identify Cutlery and More's on-line retail store services featuring cutlery, cookware, kitchen items and accessories and to distinguish those services from those offered by others.  Long before Defendant Dasalla engaged in the conduct described in this Complaint, Cutlery and More had invested substantial time, effort and expense extensively promoting and advertising the CUTLERYANDMORE.COM mark in connection with its services, including the promotion and advertising of the CUTLERYANDMORE.COM mark in this District.

12.     As a result of the continuous and high-profile advertising and promotion of the CUTLERYANDMORE.COM mark by Cutlery and More, and the extensive services provided over the years in connection with the mark, Cutlery and More has become publicly recognized as to the source of the subject services.  As a result, the CUTLERYANDMORE.COM mark is an asset of substantial value symbolizing Cutlery and More, its quality services, and its goodwill.

**DEFENDANT'S UNAUTHORIZED USE**

13.     Cutlery and More never authorized, licensed or otherwise permitted Dasalla to use the CUTLERYANDMORE.COM mark, or any confusingly similar variation, derivative, or imitation.

14.     Without authorization, license or authority from Cutlery and More, Defendant Dasalla advertised the confusingly similar CUTLERYANDBEYOND trademark on its website,

4

and used the same as a domain name in connection with both a retail store and an on-line retail store featuring cutlery and kitchenware.

15.     Upon information and belief, Dasalla registered the domain www.cutleryandbeyond.com on December 3, 2006.

16.     Dasalla's use of the confusingly similar mark CUTLERYANDBEYOND.COM has and will continue to divert internet traffic.

17.     Upon information and belief, Dasalla had constructive notice of Cutlery and More's trademark rights as of December 3, 2006, the date Dasalla registered its domain name www.cutleryandbeyond.com, and Dasalla knew or should have known of the valuable reputation and goodwill symbolized by Cutlery and More's CUTLERYANDMORE.COM mark and its association with Cutlery and More.

18.     Upon information and belief, at the time Dasalla engaged in the acts complained of herein, Dasalla had actual knowledge of the valuable reputation and goodwill symbolized by Cutlery and More's CUTLERYANDMORE.COM mark and its association with Cutlery and More.  Despite Cutlery and More's prior rights, Dasalla adopted, used in advertising, used on its web sites, and used as domain names, terms confusingly similar to Cutlery and More's CUTLERYANDMORE.COM mark for the purpose of, and with the intention of, trading off of Cutlery and More's goodwill and reputation.

## TRADEMARK TRIAL AND APPEAL BOARD PROCEEDING

19.     On October 19, 2010, Dasalla filed a trademark application for the mark CUTLERYANDBEYOND to identify "retail store and on-line retail store services featuring cutlery and kitchenware" with a first use date of August 2000.  (Exh. 2).

20.     Cutlery and More opposed the registration of the CUTLERYANDBEYOND trademark and filed an Opposition proceeding on September 19, 2011 with the Trademark Trial and Appeal Board ("TTAB").

21.     On October 31, 2014, the TTAB sustained the Opposition proceeding finding that Cutlery and More's registered mark so resembles Dasalla's applied-for mark the Dasalla's mark will likely give rise to confusion, mistake or deception as to the source of Cutlery and More's services.  The TTAB found that: (1) the parties' services are identical and travel through the same channels to the same classes of customers, (2) the parties' marks CUTLERYANDMORE.COM and CUTLERYANDBEYOND are similar in structure and meaning and partly similar in sound, (3) the differences that have the potential to distinguish the marks are not visually salient, and (4) credible evidence existed of actual confusion relating to the parties' marks. (Exh. 3).

## DEFENDANT'S UNAUTHORIZED USE SUPPORTS
## A LIKELIHOOD OF CONFUSION

22.     Dasalla's unauthorized use of the CUTLERYANDMORE.COM mark, or a confusingly similar variation, derivative, or imitation, by providing a website in connection with a retail store and an on-line retail store services featuring cutlery, cookware, kitchen items and accessories has and is likely to continue to mislead, deceive, and confuse the purchasing public and the trade including vendors. Consumers have and will continue to conclude that Dasalla is connected, associated or affiliated with Cutlery and More.

23.     Actual confusion as to source, sponsorship, affiliation, connection or identification has occurred and is occurring because of Dasalla's unauthorized use of the CUTLERYANDBEYOND mark.  On a number of occasions, consumers contacted Cutlery and More instead of Dasalla concerning product the customers purchased from Dasalla.

24.     Dasalla's activities will likely to continue to cause confusion or mistake, or to deceive the consuming public and the trade as to the source or origin of the goods and services offered by Cutlery and More and the sponsorship and/or endorsement of those goods by Cutlery and More.

25.     Dasalla's activities will likely to continue to dilute the value of Cutlery and More's CUTLERYANDMORE.COM mark by diminishing the public association of the mark with Cutlery and More and working an adverse effect upon the distinctiveness of the mark, thus creating a likelihood of injury to Cutlery and More's respected reputation.

26.     As a result of Dasalla's actions, Cutlery and More suffered and continues to suffer substantial damages and irreparable injury.  Cutlery and More has and is likely to continue to feel the effects of injury within this District from the likelihood of confusion, mistake, or deception as to the false affiliation, connection, or association with Cutlery and More, the loss of customers, tarnishing of reputation, and the loss of good will.

27.     Cutlery and More has no adequate remedy at law, and unless Dasalla is restrained and enjoined by the Court, Dasalla's activities will be continued and will continue to cause damage and irreparable injury to Cutlery and More, and to damage its goodwill and business reputation.  Because of the threatened continuation of loss of customers and sales, Cutlery and More cannot ascertain the precise amount of its damages at this time.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**
**VIOLATION OF SECTION 43(a) OF THE LANHAM ACT**

28.     As its first ground for relief, Cutlery and More claims violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), based on federal trademark infringement.  Cutlery and More repeats and realleges the allegations of paragraphs 1 through 27 as if set forth fully herein.

7

29.     Dasalla's unauthorized use of the infringing trademark CUTLERYANDBEYOND in interstate commerce has caused and is likely to continue to cause confusion, mistake, or deception as to source, association or sponsorship with Cutlery and More's CUTLERYANDMORE.COM mark.  The relevant public has believed and is likely to believe Dasalla's services originate with, are licensed by, sponsored by, connected with, or associated with Cutlery and More.  Dasalla's unauthorized use of the infringing mark falsely represents Dasalla as being legitimately connected with Cutlery and More, and places Cutlery and More's reputation beyond Cutlery and More's control.

30.     Cutlery and More has been and is being damaged by such trademark infringement and has no adequate remedy at law.  Dasalla's unlawful conduct will continue to damage Cutlery and More unless enjoined by this Court.

31.     Based on Dasalla's previous and continuing knowledge of Cutlery and More's Federal Registered Mark and continued activities, Dasalla's trademark infringement is willful.

## COUNT II
## FEDERAL UNFAIR COMPETITION
## VIOLATION OF SECTION 43(a) OF THE LANHAM ACT

32.     As its second ground for relief, Cutlery and More hereby alleges federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Cutlery and More repeats and realleges the allegations of paragraphs 1 through 31 above, as though fully set forth herein.

33.     Dasalla's adoption and use of the CUTLERYANDMORE.COM mark or a confusingly similar variation, derivative, or imitation, constitutes use of a false designation of origin or a false representation, which wrongfully and falsely designates, describes or represents the origins of Dasalla's services and business as originating from or being in connection with

Cutlery and More when this is not the case, and thereby constitutes a false description or representation used in interstate commerce.

34.     Cutlery and More has been and is being damaged by such violation and has no adequate remedy at law.  Dasalla's unlawful and willful conduct will continue to damage Cutlery and More unless enjoined by this Court.

35.     Based on Dasalla's previous and continuing knowledge of Cutlery and More's Federal Registered Mark and continued activities, Dasalla's federal unfair competition violation is willful.

## COUNT III
## FEDERAL DILUTION
## VIOLATION OF SECTION 43(c) OF THE LANHAM ACT

36.     As its third ground for relief, Cutlery and More hereby alleges federal dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  Cutlery and More repeats and realleges the allegations of paragraphs 1 through 35 above, as though fully set forth herein.

37.     Dasalla's adoption and commercial use of the CUTLERYANDMORE.COM mark, or a confusingly similar variation, derivative, or imitation, constitutes use in commerce of a mark or trade name after that mark has become famous, and causes dilution of the distinctive quality of the famous CUTLERYANDMORE.COM mark, and thereby constitutes dilution of the mark.

38.     Cutlery and More has been and is being damaged by such violation and has no adequate remedy at law.  Dasalla's unlawful and willful conduct will continue to damage Cutlery and More unless enjoined by this Court.

39.     Based on Dasalla's previous and continuing knowledge of Cutlery and More's Federal Registered Mark and continued activities, Dasalla's dilution of the CUTLERYANDMORE.COM mark is willful.

## COUNT IV
## CYBERSQUATTING UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

40.     As its fourth ground for relief, Cutlery and More hereby alleges cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). Cutlery and More repeats and realleges the allegations of paragraphs 1 through 39 above, as though fully set forth herein.

41.     Dasalla's domain name www.cutleryandbeyond.com is identical or confusingly similar to Cutlery and More's domain name www.cutleryandmore.com, which was distinctive and/or famous at the time Dasalla registered its domain name.

42.     Dasalla registered and/or has used the domain name www.cutleryandbeyond.com with bad faith intent to profit from Cutlery and More's trademarks.

43.     Cutlery and More has been and is being damaged by such cybersquatting and has no adequate remedy at law.  Dasalla's unlawful conduct will continue to damage Cutlery and More unless enjoined by this Court.

44.     Based on Dasalla's previous and continuing knowledge of Cutlery and More's Federal Registered Mark and continued activities, Dasalla's cybersquatting is willful.

## COUNT V
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

45.     As its fifth ground for relief, Cutlery and More hereby alleges deceptive trade practice violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill.Comp.Stat. § 510/1, *et seq.*  Cutlery and More repeats and realleges the allegations of paragraphs 1 through 44 above, as though fully set forth herein.

46.     The Illinois Uniform Deceptive Trade Practices Act, 815 Ill.Comp.Stat.§ 510/1, *et seq.*, provides that a person engages in deceptive trade practices when, *inter alia,* that person

"(1) passes off goods or services as those of another; … (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another; … [or] (5) represents that goods or services have sponsorship, approval, characteristics, … that they do not have…." regardless of whether or not there is "competition between the parties or actual confusion or misunderstanding." 815 Ill.Comp.Stat. § 510/2.

47.     Cutlery and More notified Dasalla that its use of the CUTLERYANDBEYOND mark constituted infringement of Cutlery and More's trademark rights and requested that Dasalla cease and desist from its acts. Dasalla, however, has refused to cease such acts.

48.     Dasalla's unauthorized use of the CUTLERYANDMORE.COM mark, or a confusingly similar variation, derivative, or imitation, trades on the business reputation and good will of Cutlery and More that causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of services deceiving the public into believing that Dasalla is affiliated, connected or associated with Cutlery and More in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill.Comp.Stat. § 510/1-7 (1965).

49.     Cutlery and More has been and is being damaged by such violation and has no adequate remedy at law. Dasalla's unlawful and willful conduct will continue to damage Cutlery and More unless enjoined by this Court.

50.     Based on Dasalla's previous and continuing knowledge of Cutlery and More's trademarks and continued activities, Dasalla's violation of the Illinois Uniform Deceptive Trade Practices Act is willful.

## COUNT VI
## VIOLATION OF ILLINOIS CONSUMER FRAUD
## AND DECEPTIVE BUSINESS PRACTICES ACT

51.     As its sixth ground for relief, Cutlery and More hereby alleges deceptive trade practice violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815

Ill.Comp.Stat. § 505/1, *et seq.* Cutlery and More repeats and realleges the allegations of paragraphs 1 through 50 above, as though fully set forth herein.

52.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill.Comp.Stat. § 505/1, *et seq*., makes "the use or employment of any deception[,] fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, … or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act'… in the conduct of any trade or commerce" unlawful, regardless whether "any person has in fact been misled, deceived or damaged thereby." 815 Ill.Comp.Stat. § 505/2.

53.     Dasalla's continuing unauthorized use of the CUTLERYANDMORE.COM mark, or a confusingly similar variation, derivative, or imitation, so as to mislead and deceive the public by suggesting an association, connection or affiliation of Dasalla with Cutlery and More is an unfair method of competition and a deceptive act or practice in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill.Comp.Stat. § 505/1-12 (1961).

54.     Cutlery and More has been and is being damaged by such violation and has no adequate remedy at law. Dasalla's unlawful conduct will continue to damage Cutlery and More unless enjoined by this Court.

55.     Based on Dasalla's previous and continuing knowledge of Cutlery and More's trademarks and continued activities, Dasalla's violation of the Illinois Consumer Fraud and Deceptive Business Practices Act is willful.

## COUNT VII
## VIOLATION OF ILLINOIS TRADEMARK REGISTRATION AND PROTECTION ACT AND COMMON LAW

56.     As its seventh ground for relief, Cutlery and More hereby alleges dilution in violation of the Illinois Trademark Registration and Protection Act, 765 ILCS 1036 (1998), and the common law of Illinois.  Cutlery and More repeats and realleges the allegations of paragraphs 1 through 55 above, as though fully set forth herein.

57.     Dasalla's continuing unauthorized use of the CUTLERYANDMORE.COM mark, or a confusingly similar variation, derivative, or imitation, in promoting its operation is a violation of the Illinois Trademark Registration and Protection Act, 765 ILCS 1036 (1998), and the common law of Illinois in that it diminishes the public association of the CUTLEYANDMORE.COM mark with Cutlery and More and works an inexorably adverse effect upon the distinctiveness of the CUTLERYANDMORE.COM mark by diluting the quality of the mark and by creating a likelihood of injury to Cutlery and More's respected reputation.

58.     Cutlery and More has been and is being damaged by such violation and has no adequate remedy at law.  Dasalla's unlawful conduct will continue to damage Cutlery and More unless enjoined by this Court.

59.     Based on Dasalla's previous and continuing knowledge of Cutlery and More's trademarks and continued activities, Dasalla's violation of the Illinois Trademark Registration and Protection Act is willful.

## COUNT VIII
## VIOLATION OF COMMON LAW UNFAIR COMPETITION

60.     As its eighth ground for relief, Cutlery and More hereby alleges common law unfair competition.  Cutlery and More repeats and realleges the allegations of paragraphs 1 through 59 above, as though fully set forth herein.

61.     As a result of its actions, Dasalla has misappropriated valuable property rights of Cutlery and More, is trading on the goodwill of Cutlery and More as symbolized by Cutlery and More's distinctive CUTLERYANDMORE.COM mark, and has and is thereby likely to further confuse and deceive members of the purchasing public in violation of the common law of unfair competition of the State of Illinois.

62.     Cutlery and More has been and is being damaged by such violation and has no adequate remedy at law.  Dasalla's unlawful conduct will continue to damage Cutlery and More unless enjoined by this Court.

63.     Based on Dasalla's previous and continuing knowledge of Cutlery and More's trademarks and continued activities, Dasalla's violation of common law unfair competition is willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cutlery and More, LLC demands:

1.     Defendant, its officers, agents, servants, employees, licensees, attorneys, successors, related companies, parent companies, and assigns, and all those in active concert or participation with them, be forthwith preliminarily and thereafter permanently enjoined and restrained from:

a.  Using the CUTLERYANDBEYOND mark or any other similar mark, domain name or designation that is confusingly similar to the CUTLERYANDMORE.COM mark or gives rise to a likelihood of confusion, mistake or deception with respect to Plaintiff's CUTLERYANDMORE.COM mark;

b.  Doing any other act or thing likely to induce the mistaken belief that the Defendant or its services or business, is in any way approved by or affiliated, connected or associated with Plaintiff or Plaintiff's services; and

     c.   Unfairly competing with Plaintiff in any manner whatsoever or

causing injury to the business reputation of Plaintiff.

2.     Defendant be required to deliver to Plaintiff for destruction all on-line and retail

advertisements, brochures, labels, signs, prints, packages, wrappers, etc. and related materials in

possession of the Defendant bearing the CUTLERYANDBEYOND mark, and remove the same

from any and all websites and social media that bear the mark;

3.     An accounting of any and all profits derived by Defendant from the sale of goods

offered through the on-line retail store;

4.     All profits received by the Defendant from sales and revenues of any kind made

as a result of its actions directed to infringing services including prejudgment interest;

5.     All damages sustained by Plaintiff as a result of the Defendant's acts, together

with prejudgment interest;

6.     Based on Defendant's knowing and intentional use of trademarks confusingly

similar to Plaintiff's marks, the damages aware be trebled and the award of Defendant's profits

be enhanced pursuant to 15 U.S.C. § 1117(a);

7.     That because of the exceptional nature of this case, resulting from the Defendant's

deliberate and willful infringement, this Court award Plaintiff reasonable attorneys' fees, costs

and disbursements pursuant to 15 U.S.C. § 1117(a);

8.     Based on Defendant's willful and deliberate infringement, and to deter such

conduct in the future, Plaintiff be awarded punitive damages;

9.     Defendant be directed to file with the Court and serve upon Plaintiff within thirty

(30) days after issuance of an injunction, a report in writing and under oath setting forth in detail

the manner and form in which the Defendant have complied with the injunction.

10.     Defendant be ordered and directed to transfer the domain name

www.cutleryandbeyond.com to Plaintiff.

11.     Plaintiff be awarded such other and further relief as this Court may deem

equitable and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

CUTLERY AND MORE, LLC


Date:  June 2, 2015                    /s/Allison M. Corder
                                       Allison M. Corder, ARDC 6276467
                                       VALAUSKAS  CORDER, LLC
                                       150 South Wacker Drive, Suite 620
                                       Chicago, Illinois  60606
                                       (312) 673-0360  Telephone
                                       (312) 673-0361   Facsimile

                                       Attorneys for Plaintiff,
                                       CUTLERY AND MORE, LLC

# Exhibit 1



# United States of America
### United States Patent and Trademark Office

**cutleryandmore.com**

**Reg. No. 3,954,102**

**Registered May 3, 2011**

**Corrected Mar. 11, 2014**

**Int. Cl.: 35**

**SERVICE MARK**

**PRINCIPAL REGISTER**

CUTLERY AND MORE, LLC (ILLINOIS LIMITED LIABILITY COMPANY)
135 PRAIRIE LAKE ROAD
EAST DUNDEE, IL 60118

FOR: ON-LINE RETAIL STORE SERVICES FEATURING CUTLERY, COOKWARE, KITCHEN ITEMS AND ACCESSORIES THEREOF, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 8-13-2010; IN COMMERCE 8-13-2010.

THE MARK CONSISTS OF THE STYLIZED TEXT "CUTLERYANDMORE.COM" WITH A LINE APPEARING BENEATH THE WORDS "ANDMORE.".

SER. NO. 85-109,459, FILED 8-17-2010.



Michelle K. Lee

**Deputy Director of the United States
Patent and Trademark Office**

Exhibit 2

**Generated on:** This page was generated by TSDR on 2015-06-01 15:13:52 EDT

**Mark:** CUTLERYANDBEYOND

CUTLERYANDBEYOND

| | | | |
|---|---|---|---|
| **US Serial Number:** | 85156141 | **Application Filing Date:** | Oct. 19, 2010 |
| **Filed as TEAS Plus:** | Yes | **Currently TEAS Plus:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Service Mark | | |
| **Status:** | An opposition after publication is pending at the Trademark Trial and Appeal Board. For further information, see TTABVUE on the Trademark Trial and Appeal Board web page. | | |
| **Status Date:** | Sep. 19, 2011 | | |
| **Publication Date:** | Mar. 22, 2011 | | |

# Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | CUTLERYANDBEYOND |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |

# Goods and Services

**Note:** The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Retail store and on-line retail store services featuring cutlery and kitchenware | | |
| **International Class(es):** | 035 - Primary Class | **U.S Class(es):** | 100, 101, 102 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Aug. 2000 | **Use in Commerce:** | Aug. 2000 |

# Basis Information (Case Level)

| | | | | | |
|---|---|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes | **Amended Use:** | No |
| **Filed ITU:** | No | **Currently ITU:** | No | **Amended ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No | **Amended 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No | **Amended 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No | | |
| **Filed No Basis:** | No | **Currently No Basis:** | No | | |

# Current Owner(s) Information

| | | | |
|---|---|---|---|
| **Owner Name:** | Desalla Trading Company | | |
| **Owner Address:** | 828 North Victory Blvd<br>Burbank, CALIFORNIA 91502<br>UNITED STATES | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | CALIFORNIA |

# Attorney/Correspondence Information

**Attorney of Record**

| | | | |
|---|---|---|---|
| **Attorney Name:** | Matthew H. Swyers, Esq. | | |
| **Attorney Primary Email Address:** | admin@thetrademarkcompany.com | **Attorney Email Authorized:** | Yes |

**Correspondent**

| | |
|---|---|
| **Correspondent Name/Address:** | BEN T LILA<br>MANDOUR & ASSOCIATES APC |

16870 W BERNARDO DR
SUITE 400
SAN DIEGO, CALIFORNIA 92127
UNITED STATES

**Phone:** 800-906-8626 x 704                    **Fax:** 270-477-4574

**Correspondent e-mail:** admin@thetrademarkcompany.com          **Correspondent e-mail Authorized:** Yes

| Domestic Representative - Not Found |
| --- |

## Prosecution History

| Date | Description | Proceeding Number |
| --- | --- | --- |
| Oct. 31, 2014 | OPPOSITION SUSTAINED NO. 999999 | 201666 |
| Sep. 19, 2011 | OPPOSITION INSTITUTED NO. 999999 | 201666 |
| Apr. 21, 2011 | EXTENSION OF TIME TO OPPOSE RECEIVED | |
| Mar. 22, 2011 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Mar. 22, 2011 | PUBLISHED FOR OPPOSITION | |
| Jan. 28, 2011 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Jan. 28, 2011 | ASSIGNED TO EXAMINER | 81840 |
| Oct. 23, 2010 | NOTICE OF PSEUDO MARK MAILED | |
| Oct. 22, 2010 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Oct. 22, 2010 | NEW APPLICATION ENTERED IN TRAM | |

## TM Staff and Location Information

| TM Staff Information | |
| --- | --- |
| **TM Attorney:** HETZEL, DANNEAN | **Law Office Assigned:** LAW OFFICE 106 |

| File Location | |
| --- | --- |
| **Current Location:** PUBLICATION AND ISSUE SECTION | **Date in Location:** Feb. 15, 2011 |

## Proceedings

| Summary | |
| --- | --- |
| **Number of Proceedings:** 2 | |

| Type of Proceeding: Opposition | |
| --- | --- |
| **Proceeding Number:** 91201666 | **Filing Date:** Sep 19, 2011 |
| **Status:** Pending Court Appeal | **Status Date:** Sep 19, 2011 |
| **Interlocutory Attorney:** MARY CATHERINE FAINT | |

| Defendant | |
| --- | --- |
| **Name:** Desalla Trading Company | |
| **Correspondent Address:** BEN T LILA<br>MANDOUR & ASSOCIATES APC<br>16870 W BERNARDO DR, SUITE 400<br>SAN DIEGO CA , 92127<br>UNITED STATES | |
| **Correspondent e-mail:** blila@mandourlaw.com , jmandour@mandourlaw.com , ggray@mandourlaw.com | |

| Associated marks | | | |
| --- | --- | --- | --- |
| **Mark** | **Application Status** | **Serial Number** | **Registration Number** |
| CUTLERYANDBEYOND | Opposition Pending | 85156141 | |

| Plaintiff(s) | |
| --- | --- |
| **Name:** Cutlery and More, LLC | |
| **Correspondent Address:** ALLISON M CORDER<br>VALAUSKAS CORDER LLC<br>150 SOUTH WACKER DRIVE, SUITE 620<br>CHICAGO IL , 60606<br>UNITED STATES | |
| **Correspondent e-mail:** ccv@vciplaw.com , docket@vciplaw.com , wilt@vciplaw.com , corder@vciplaw.com , mb@vciplaw.com | |

| Associated marks | | | |
| --- | --- | --- | --- |
| **Mark** | **Application Status** | **Serial Number** | **Registration Number** |

| | | | |
|---|---|---|---|
| CUTLERYANDMORE.COM | Registered | 85109459 | 3954102 |
| CUTLERYANDMORE | Report Completed Suspension Check - Case Still Suspended | 85345038 | |
| CUTLERYAND | Report Completed Suspension Check - Case Still Suspended | 85345016 | |

## Prosecution History

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 1 | FILED AND FEE | Sep 19, 2011 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Sep 19, 2011 | Oct 29, 2011 |
| 3 | PENDING, INSTITUTED | Sep 19, 2011 | |
| 4 | ANSWER | Oct 11, 2011 | |
| 5 | P'S MOTION TO COMPEL DISCOVERY | May 23, 2012 | |
| 6 | SUSPENDED PENDING DISP OF OUTSTNDNG MOT | May 24, 2012 | |
| 7 | TRIAL DATES RESET | Jan 30, 2013 | |
| 8 | P MOT FOR SUMMARY JUDGMENT | May 22, 2013 | |
| 9 | SUSP PEND DISP OF OUTSTNDNG MOT | May 29, 2013 | |
| 10 | D OPP/RESP TO MOTION | Jun 21, 2013 | |
| 11 | P REPLY IN SUPPORT OF MOTION | Jul 11, 2013 | |
| 12 | P MOT FOR SUMMARY JGT DENIED | Aug 28, 2013 | |
| 13 | P MOT FOR EXT W/ CONSENT | Sep 25, 2013 | |
| 14 | EXTENSION OF TIME GRANTED | Sep 30, 2013 | |
| 15 | TRIAL DATES RESET | Nov 04, 2013 | |
| 16 | P NOTICE OF RELIANCE | Dec 26, 2013 | |
| 17 | P TESTIMONY | Jan 17, 2014 | |
| 18 | D NOTICE OF RELIANCE | Feb 25, 2014 | |
| 19 | D MOT FOR EXT W/ CONSENT | Mar 12, 2014 | |
| 20 | EXTENSION OF TIME GRANTED | Mar 13, 2014 | |
| 21 | P FINAL BRIEF: TM RULE 2.128 | Jul 01, 2014 | |
| 22 | P FINAL BRIEF: TM RULE 2.128 | Jul 01, 2014 | |
| 23 | D TESTIMONY | Jul 28, 2014 | |
| 24 | D FINAL BRIEF: TM RULE 2.128 | Jul 30, 2014 | |
| 25 | P REPLY BRIEF OR REBUTTAL BRIEF ON COUNTERCLAIM: TM RULE 2.128 | Aug 15, 2014 | |
| 26 | SUBMITTED ON BRIEF | Sep 03, 2014 | |
| 27 | BD DECISION: SUSTAINED | Oct 31, 2014 | |
| 28 | D APPEARANCE / POWER OF ATTORNEY | Dec 30, 2014 | |
| 29 | CHANGE OF CORRESP ADDRESS | Dec 30, 2014 | |
| 30 | APPEAL TO DISTRICT CT | Dec 30, 2014 | |

## Type of Proceeding: Extension of Time

| | | | |
|---|---|---|---|
| Proceeding Number: | 85156141 | Filing Date: | Apr 21, 2011 |
| Status: | Terminated | Status Date: | Sep 19, 2011 |
| Interlocutory Attorney: | | | |

### Defendant

| | |
|---|---|
| Name: | Desalla Trading Company |
| Correspondent Address: | MATTHEW H. SWYERS, ESQ.<br>THE TRADEMARK COMPANY<br>344 MAPLE AVE W STE 151<br>VIENNA VA , 22180-5612<br>UNITED STATES |

### Associated marks

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| CUTLERYANDBEYOND | Opposition Pending | 85156141 | |

**Potential Opposer(s)**

| | |
|---|---|
| **Name:** | Cutlery and More, LLC |
| **Correspondent Address:** | Charles C. Valauskas |
| | Valauskas Corder LLC |
| | 150 South Wacker Drive Suite 620 |
| | Chicago IL , 60606 |
| | UNITED STATES |
| **Correspondent e-mail:** | ccv@vciplaw.com , lcipra@vciplaw.com , wilt@vciplaw.com |

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| | | | |

**Prosecution History**

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 1 | INCOMING - EXT TIME TO OPPOSE FILED | Apr 21, 2011 | |
| 2 | EXTENSION OF TIME GRANTED | Apr 21, 2011 | |
| 3 | INCOMING - EXT TIME TO OPPOSE FILED | May 20, 2011 | |
| 4 | EXTENSION OF TIME GRANTED | May 20, 2011 | |
| 5 | INCOMING - EXT TIME TO OPPOSE FILED | Jul 19, 2011 | |
| 6 | EXTENSION OF TIME GRANTED | Jul 19, 2011 | |

# Exhibit 3

THIS OPINION IS NOT A
PRECEDENT OF THE TTAB

Mailed:
October 31, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*Cutlery and More, LLC*
*v.*
*Dasalla Trading Company*[1]
_____

Opposition No. 91201666
_____

Charles C. Valauskas and Allison M. Corder of Valauskas Corder LLC for Cutlery and More, LLC.

Matthew H. Swyers of The Trademark Company, PLLC for Dasalla Trading Company.

_____

Before Quinn, Bergsman and Masiello, Administrative Trademark Judges.

Opinion by Masiello, Administrative Trademark Judge:

Dasalla Trading Company ("Applicant") filed an application to register the mark CUTLERYANDBEYOND in standard characters for "Retail store and on-line retail store services featuring cutlery and kitchenware," in International Class 35.[2]

_____

[1] Applicant is identified in the application as "Desalla Trading Company." This is a misspelling of Applicant's actual name, which appears in correct form in the caption of this decision.

[2] Application Serial No. 85156141, filed on October 19, 2010 under Trademark Act § 1(a), 15 U.S.C. § 1051(a), stating August 2000 as the date of first use anywhere and first use in commerce.

Opposition No. 91201666

Cutlery and More, LLC ("Opposer") opposed registration of the mark on the ground that the mark, as used in connection with the identified services, so resembles Opposer's earlier used marks CUTLERYANDMORE.COM and CUTLERYANDMORE and Opposer's registered mark shown below as to be likely to cause confusion, mistake or deception, under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).



Opposer pleaded ownership of Registration No. 3954102 for the mark shown above for "On-line retail store services featuring cutlery, cookware, kitchen items and accessories thereof," in International Class 35.[3] Color is not claimed as a feature of the registered mark.[4] Applicant, in its answer, denied the salient allegations of the notice of opposition. The case has been fully briefed.

## I.    <u>The record.</u>

The record includes the pleadings and, by operation of Trademark Rule 2.122, 37 C.F.R. § 2.122, the application file for the opposed mark. Opposer's

---

[3] Reg. No. 3954102 issued May 3, 2011.

[4] Applicant also pleaded ownership of two pending applications, Serial No. 85345038 for the mark CUTLERYANDMORE (in standard characters) and Serial No. 85345016 for the mark CUTLERYAND (in standard characters). Both applications were filed on June 13, 2011 and prosecution of both has been suspended to await the final disposition of the application that is the subject of this proceeding.

Opposition No. 91201666

pleaded registration was made of record under a notice of reliance, in the form of a current printout of information from the electronic database records of the USPTO showing current status and title of the registration.[5]  The record also includes the following testimony and evidence:

## A.    Opposer's evidence.

1.    Testimony deposition of Michael Beltrami, Opposer's owner, dated December 19, 2013 (with exhibits). 17 TTABVUE 2-58.

2.    Testimony deposition of Kristen Kohuch, Opposer's customer service manager, dated December 19, 2013 (with exhibits). 17 TTABVUE 59-94.

3.    Notice of reliance (16 TTABVUE 1-70) on the following evidence:

-    Information regarding various pending applications of Opposer.

-    WHOIS data for the domain <cutleryandmore.com>.

-    Web pages of Opposer from <web.archive.org>.

-    Web pages from <cutleryandmore.com>.

-    Web pages from <cutleryandbeyond.com>.

-    Applicant's admissions in response to certain requests for admission.

-    Applicant's responses to interrogatories of Opposer.

-    Definitions of the words "more" and "beyond."

## B.    Applicant's evidence.

1.    Testimony deposition of Eddie Valdez Dasalla, Applicant's founder, dated February 10, 2014 (with exhibits). 23 TTABVUE 1-35.

2.    Notice of reliance (18 TTABVUE 1-48) on the following evidence:

---

[5] 16 TTABVUE 6-9. Citations to the record will be to TTABVUE, the docket history system for the Trademark Trial and Appeal Board.

Opposition No. 91201666

-     Opposer's responses to interrogatories of Applicant.

-     Third-party registrations of marks that include the designation CUTLERY.

## II.   <u>Standing</u>.

Opposer has properly made of record its pleaded registration and has presented testimony regarding its use of the service mark CUTLERY AND MORE and the web address <cutleryandmore.com> in connection with retail services.[6] Opposer has thus shown that it is not a mere intermeddler and has established its standing to oppose registration of Applicant's mark. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999); and *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

## III.   <u>Opposer's claim under Section 2(d)</u>.

Opposer brings its opposition under Trademark Act § 2(d) on the ground of priority and likelihood of confusion. In view of Opposer's ownership of a valid and subsisting registration of its pleaded mark, priority is not in issue with respect to the mark and the services identified in the registration. *King Candy, Inc. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).[7]

Our determination of likelihood of confusion is based on an analysis of all probative facts in evidence that are relevant to the factors set forth in *In re E. I. du*

---

[6] Beltrami 4:6-24; 6:20-7:2; 25:2-3, 17 TTABVUE 7; 9-10; and 28.

[7] For purposes of this decision, we need not address Opposer's claim of priority with respect to its common law rights in the pleaded mark CUTLERY AND MORE.

Opposition No. 91201666

*Pont de Nemours & Co.* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also In re Majestic Distilling Co., Inc.,* 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).

## A.    The parties' services.

Turning first to the similarity or dissimilarity of the services at issue, we find that they are essentially identical. Both the application and the Opposer's pleaded registration identify "online retail store services featuring cutlery." The application also indicates that "kitchenware" is offered through Applicant's online retail service. We see little difference between this category of product and the "kitchen items" and "cookware" that are listed in the registration as goods offered through Opposer's online retail services.

In the context of an opposition proceeding, the question of registrability of an applicant's mark must be decided on the basis of the identifications of goods and services set forth in the application and registration at issue. *See Octocom Syst. Inc. v. Houston Computers Svcs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990); *Kalart Co., Inc. v. Camera-Mart, Inc.*, 119 USPQ 139 (CCPA 1958); *In re Elbaum*, 211 USPQ 639, 640 (TTAB 1981). Accordingly, the *du Pont* factor regarding the similarity or dissimilarity of the services weighs heavily in favor of a finding of likelihood of confusion.[8]

## B.    Channels of trade.

We next consider the parties' established and likely to continue channels of trade. Because the parties' services are identical, we must presume that they move

---

[8] We note, moreover, that Applicant has admitted that the parties' services are identical. (Applicant's brief at 1, 24 TTABVUE 7).

Opposition No. 91201666

through the same channels of trade[9] and are sold to the same classes of purchasers. *See In re Viterra Inc.,* 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *American Lebanese Syrian Associated Charities Inc. v. Child Health Research Institute,* 101 USPQ2d 1022, 1028 (TTAB 2011); *In re Smith and Mehaffey,* 31 USPQ2d 1531, 1532 (TTAB 1994). As there are no limitations as to channels of trade in the identifications of services in the registration and application, we presume that the parties' services move in all channels of trade that are normal for such services. *See Octocom,* 16 USPQ2d at 1787; *Paula Payne Products Co. v. Johnson Publishing Co.,* 473 F.2d 901, 177 USPQ 76 (CCPA 1973); *In re Linkvest S.A.,* 24 USPQ2d 1716, 1716 (TTAB 1992). The parties' testimony shows that such channels include the parties' own internet websites; advertising on retail websites of others, such as Amazon.com; placement of orders over the telephone; key word advertising on search engines; print advertising; email advertisements; fliers; and catalogues.[10]  As the parties actually share, or are presumed to share, these channels, the *du Pont* factor of trade channels weighs heavily in favor of a finding of likelihood of confusion.[11]

---

[9] Moreover, Applicant has admitted that the "channels of trade and marketing" of the parties' services are identical. (Applicant's brief at 1, 24 TTABVUE 7).

[10] Beltrami 4:10-5:7, 17 TTABVUE 7-8; Dasalla 19:3-13; 26:15-27:14; 23 TTABVUE 22, 29.

[11] We note Applicant's comment that Opposer began to advertise its services on Amazon.com only after it learned, during this proceeding, that Applicant was availing itself of this trade channel. (Applicant's brief at 7, 24 TTABVUE 13). Of course, there is no reason why Opposer should consider itself foreclosed from offering its services on Amazon.com, as it is a normal and highly suitable trade channel for purveyors of consumer goods. The convergence of Applicant and Opposer in the trade channel of Amazon.com is a perfect illustration of the validity of our presumption that identical services will move through identical trade channels.

Opposition No. 91201666

### C.   <u>The marks at issue</u>.

We next consider the similarity or dissimilarity of the marks at issue in terms of appearance, sound, meaning, and overall commercial impression. *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin,* 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005). In doing so, we bear in mind that "The proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs., Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012). The proper focus is on the recollection of the average customer, who retains a general rather than specific impression of the marks. *Winnebago Industries, Inc. v. Oliver & Winston, Inc.,* 207 USPQ 335, 344 (TTAB 1980); *Sealed Air Corp. v. Scott Paper Co.,* 190 USPQ 106, 108 (TTAB 1975). In comparing the marks, we are mindful that "[w]hen marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines." *Century 21 Real Estate Corp. v. Century Life of America,* 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992); *Jansen Enterprises Inc. v. Rind,* 85 USPQ2d 1104, 1108 (TTAB 2007); *Schering-Plough HealthCare Products Inc. v. Ing-Jing Huang,* 84 USPQ2d 1323, 1325 (TTAB 2007). We base our determination on a consideration of the marks in their entireties. However, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate

Opposition No. 91201666

conclusion rests on a consideration of the marks in their entireties. *In re National Data Corp.,* 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).

Initially, we note that Opposer's mark is registered in special form and includes stylized lettering and a design element that are not present in Applicant's mark. Generally, the specific style of a registered mark cannot serve to distinguish an applicant's mark that is in standard character form. *In re Viterra Inc.,* 671 F.3d 1358, 101 USPQ2d 1905, 1909 (Fed. Cir. 2012), *citing In re Mighty Leaf Tea,* 601 F.3d 1342, 94 USPQ2d 1257, 1260 (Fed. Cir. 2010). In the case of marks consisting of words and a design, the words are normally given greater weight because they would be used by consumers to request the goods or services. *Sweats Fashions Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 4 USPQ2d 1793, 1798 (Fed. Cir. 1987); *Giant Food, Inc. v. Nation's Food Service, Inc.,* 710 F.2d 1565, 218 USPQ 390 (Fed. Cir. 1983); *In re Dakin's Miniatures, Inc.,* 59 USPQ2d 1593, 1596 (TTAB 1999). In any event, neither the stylization of the lettering in Opposer's mark nor the line design that underscores the words ANDMORE is particularly distinctive.

In appearance, both marks are relatively long strings of letters (16 in the case of Applicant's mark and 17 in the case of Registrant's mark) presented as a unit. Both marks begin with the letter string CUTLERYAND; the two marks differ in their remaining letters, -BEYOND and -MORE.COM, respectively. However, we note that it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered. *Palm Bay Imports Inc.,* 73 USPQ2d at 1692 ("Veuve" is the most prominent part of the mark VEUVE CLICQUOT

Opposition No. 91201666

because "veuve" is the first word in the mark and the first word to appear on the label); *Century 21*, 23 USPQ2d at 1700 (upon encountering the marks, consumers will first notice the identical lead word). In this case, the lettering that would be most capable of distinguishing the marks is visually less salient because it begins in the middle of the string of letters that constitutes each mark.

In meaning, the two marks are quite similar. Although each is presented as a single "word," customers would readily perceive that they are, in fact, composed of several common words, "cutlery and beyond" in the case of Applicant, and "cutlery and more," combined with the web address indicator ".com" in the case of Opposer. The meanings of these component elements, which are all extremely common words known to the general public, would be readily apprehended by customers. We give very little distinctive weight to the designation ".com" in Opposer's mark, because it is a standard indicator of an online address, and both parties conduct their retail sales online. *See In re Oppedahl & Larson LP*, 373 F.3d 1171, 71 USPQ2d 1370 (Fed. Cir. 2004). Of course, the words "beyond" and "more" are not the same, so we must consider their respective meanings.

Opposer has made of record dictionary definitions for the purpose of showing that "beyond" and "more" have similar meanings. It is clear that both words are subtle in meaning. However, notably, one definition states that "Beyond also means more than: *I've got nothing to tell you beyond what I said earlier*."[12] This definition suggests that "beyond" and "more" are nearly identical in meaning.

---

[12] Definition of "beyond" from CAMBRIDGE ACADEMIC CONTENT DICTIONARY at <dictionary.cambridge.org>, Opposer's notice of reliance, 16 TTABVUE 70.

Opposition No. 91201666

Opposer has also submitted a definition of "beyond" stating that the word means "To a degree or amount greater than" and "In addition to"; and a definition of "more" from the same dictionary stating that the word means "Greater in size, amount, extent, or degree" and "additional."[13]  These definitions, too, suggest that the two words are quite close in meaning.[14]  Overall, we conclude that in meaning the two marks are similar but not identical.

In terms of sound, we note both similarities and differences between the marks. They sound alike to the extent of their initial syllables, CUTLERYAND-; and they differ phonetically as to their final syllables, -BEYOND and –MORE.COM. We also note these final syllables are different in number (two *versus* three) and rhythm in the way that they would be pronounced.

Applicant argues that, in considering the similarity or dissimilarity of the marks, we should treat the words MORE and BEYOND, respectively, as the dominant portions of the marks. Applicant argues that "additions or deletions to marks are [ ] sufficient to avoid a likelihood of confusion when … the matter common to the marks is not likely to be perceived as distinguishing source because it is merely descriptive or diluted,"[15] *citing Citigroup Inc. v. Capital City Bank Group, Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011). Applicant

---

[13] Definitions of "beyond" and "more" from WEBSTER'S II NEW COLLEGE DICTIONARY (1999), pp. 106 and 712, 16 TTABVUE 68 and 67.

[14] Applicant, in its brief, appears to admit that there is a similarity in meaning between "more" and "beyond," stating that MORE is "suggestive of additional items that may be provided," and that "BEYOND is suggestive of additional services that are provided…." Applicant's brief at 13, 24 TTABVUE 19.

[15] Applicant's brief at 13, 24 TTABVUE 19.

Opposition No. 91201666

refers to the components –MORE and –BEYOND as "the only two terms that are inherently distinctive in the respective marks."[16] We agree that the word CUTLERY is very highly descriptive – and probably generic – with respect to the services of the two parties and would not, alone, be perceived as a source indicator. On the other hand, neither MORE nor BEYOND is a particularly distinctive term; as positioned in the respective marks, these words are not visually salient; and in meaning they project a much vaguer impression than the word CUTLERY. At most, one can say that they are distinctive in sound. In view of the "run-on" nature of the two marks before us, we see little reason to designate any component of the marks as a "dominant" component or to give special weight to the words MORE and BEYOND.

Considering the overall commercial impressions that arise from the appearance, sound and meaning of the two marks, we find that the similarities outweigh the differences and, accordingly, we find that the *du Pont* factor of the similarity or dissimilarity of the marks weighs in favor of a finding of likelihood of confusion.

## D.    <u>**Third-party registrations.**</u>

Applicant has made of record copies of 25 third-party registrations of marks that include the term CUTLERY.[17]  Applicant's purpose is

---

[16] *Id.*

[17] Applicant's notice of reliance, 18 TTABVUE 24-48. Opposer has objected to the admission of this evidence (Opposer's brief at 2, 21 TTABVUE 7) on the ground that it "is not evidence of what happens in the marketplace."  Opposer's objection goes not to the admissibility of the evidence, but to the weight that the Board should assign to it. The objection is overruled.

Opposition No. 91201666

> to establish that the term CUTLERY is so widely used in the parties' industry that the public will look to other elements beyond the term CUTLERY to distinguish the source of the goods or services, namely the dominant terms MORE and BEYOND. …
>
> If the public can so distinguish as between marks containing the merely descriptive term CUTLERY in conjunction with other merely descriptive or merely geographically descriptive terms such as CHICAGO, PRO, COLORADO, NEW ENGLAND, KENNESAW, LAGUNA, and SHEPHERD HILLS, then certainly these registrations must be relevant to establish that the public will also do so as between two terms, MORE and BEYOND, that are, themselves, inherently distinctive and the dominant portions of the service marks at issue.[18]

First, we must point out that third-party registrations cannot, alone, demonstrate that a term "is so widely used in the parties' industry" because they are not evidence of actual use at all. Moreover, such registrations "provide no basis for saying that the marks so registered have had, or may have, any effect at all on the public mind so as to have a bearing on likelihood of confusion." *Smith Bros. Mfg. Co. v. Stone Mfg. Co.*, 476 F.2d 1004, 177 USPQ 462, 463 (CCPA 1973); *Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1934 (TTAB 2011). We cannot interpret this evidence as establishing that "the public can distinguish as between [such] marks," because the issuance of a registration by the USPTO gives us no insight into the minds of actual customers in the marketplace. In sum, this evidence gives us no basis upon which to consider the *du Pont* factor of "the number and nature of similar marks *in use* on similar [services]." 177 USPQ at 567 (emphasis added).

---

[18] Applicant's brief at 17-18, 24 TTABVUE 23-24.

Opposition No. 91201666

The registrations do serve to confirm the significance of the term CUTLERY in the field of cutting implements and the service of retailing such implements; and we have given due consideration to this descriptive or generic significance in our analysis. Beyond this, they have little relevance to the question of whether the marks of Applicant and Opposer can be distinguished. The third-party marks do not share the structure that is common to the marks of Applicant and Opposer. Moreover, although they all include the word CUTLERY, the additional wording in each mark has meaning that is distinct from the meaning of the additional wording of the other marks. As we have discussed above, the additional wording in the marks of Applicant and Opposer results in marks that are similar in meaning.

**E.** **Actual confusion.**

Opposer has submitted testimony and documentary evidence (primarily in the form of copies of e-mails and transcripts of telephone calls) to demonstrate several instances of alleged actual confusion of source as to the services of Applicant and Opposer. Applicant has objected to the admission of such evidence on grounds that it is inadmissible hearsay.[19] On a substantive level, Applicant has also criticized the reliability of such evidence and disputed Opposer's interpretation of it.

The specific documents and materials at issue were initially offered as records kept in the course of a regularly conducted business activity, within the hearsay exception of Fed. R. Evid. 803(6). In response to Applicant's objection that those materials contained a second level of hearsay (*i.e.*, statements of customers

---

[19] Applicant's brief at 2-5, 24 TTABVUE 8-11.

Opposition No. 91201666

offered for the truth of the matter asserted therein), Opposer argues that those statements are admissible as "present sense impressions of the declarants" and that they "fall under Fed. R. Evid. 803(3) 'state of mind' exception to the hearsay rule."[20] We have reviewed Opposer's evidence of confusion with a critical eye as to its evidentiary value. Most of what Applicant characterizes as hearsay is, in fact, not offered for the truth of the matter asserted and, as such, is not subject to the rule excluding hearsay. Fed. R. Evid. 801(c). In any event, we note that evidence of the type offered by Opposer has been accepted by the Board and the courts under the "state of mind" exception, even when offered for the truth of an out-of-court declarant's assertion. *Armco Inc. v. Armco Burglar Alarm Co., Inc.*, 217 USPQ 145, 149, fn.10 (5th Cir. 1982); *Fun-Damental Too Ltd. v. Gemmy Industries Corp.*, 42 USPQ2d 1348, 1356 (2d Cir. 1997); *National Rural Electric Cooperative Ass'n v. Suzlon Wind Energy Corp.*, 78 USPQ2d 1881, 1887 (TTAB 2006).

We give consideration to the following evidence:

(1)     In an email exchange of January 29-31, 2012 between Michael Martin and Opposer's customer service personnel,[21] Mr. Martin described an order he had placed with Amazon for a product that "will ship from you [Opposer.]" When Opposer's personnel asked him for a copy of the order, he sent, as an attachment to another email, an order record stating "Sold by: CutleryAndBeyond."

(2)     The following exchange of three e-mails[22] transpired in October 2012 between an Amazon customer and Opposer's owner:

---

[20] Opposer's reply brief at 12, fn.4, 21 TTABVUE 18.

[21] Kohuch Dep., Ex. 9, 17 TTABVUE 87-89.

[22] Beltrami Dep. Ex. 3, 17 TTABVUE 48-49.

Opposition No. 91201666

CUSTOMER: I received my order just fine. This may be a stupid question but do you have directions on the correct way to use the sharpener?

Also, I found it strange that there was no packing slip in the box. …

OPPOSER'S OWNER: I might be able to help you with locating directions for the sharpener, but what sharpener are you referring to?

Did you purchase the item from us, Cutlery and More? We always include packing slip in our packages.

CUSTOMER: Maybe not. I bought it from CutleryandBeyond. I see that my email went to CutleryandMore. I'm sorry for bothering you. I will try again.

(3)   In a 2011 email exchange,[23] a customer sent an inquiry to Opposer's customer service personnel regarding an order. When Opposer's personnel requested information from the customer's credit card statement, he replied, via email:

11/14/2011  Pending  DASALLA TRADING CO. $279.85

Please see above for the copied line from my credit card statement.

(4)   In testimony, Opposer's owner described an incident involving a vendor from whom Opposer obtained some of its products. "I noticed on that day that when we went to our vendor's website StaubUSA.com and did a store search which shows places to buy their product that they had linked the Cutlery and Beyond logo that they put on their website inadvertently to our website cutleryandmore.com."[24]

(5)   The transcript of an audio recording of a telephone call between a customer and Opposer's customer service personnel,[25] shows the following exchange:

---

[23] Beltrami Dep. Ex. 4, 17 TTABVUE 50-52.

[24] Beltrami Dep. 15:5-20, 17 TTABVUE 18. We give no weight to Mr. Beltrami's characterization of the incident having occurred "inadvertently." Mr. Beltrami's instructions to the vendor to correct the error are at Beltrami Dep. Ex. 5, 17 TTABVUE 53-54.

[25] Beltrami Dep., Ex. 7, 17 TTABVUE 54-56. The audio recording was also played at the deposition and was transcribed by the court reporter.

Opposition No. 91201666

> OPPOSER'S PERSONNEL:  Cutlery and More, this is Amy. How can I help you?
>
> CUSTOMER:  Amy, last night I placed an order through Amazon with you, and I'd like to cancel that order.
>
> OPPOSER'S PERSONNEL:  OK, … The order number?
>
> CUSTOMER:  Ok, it is, um, 1020082891946.
>
> OPPOSER'S PERSONNEL:  Oh, um, that's not… are you trying to call Cutlery and More?
>
> CUSTOMER:  No, Cutlery and Beyond.

(6)  In the transcript of an audio recording of a telephone call between a customer and Opposer's customer service personnel,[26] the customer stated, "I just placed an order through Amazon but through your store."  Following a discussion of the order number, which Opposer's personnel did not recognize, the following dialogue ensued:

> OPPOSER'S PERSONNEL:  "This is Cutlery and More. Did you place the order with us?"
>
> CUSTOMER:  "Oh, I guess I didn't. I have got Cutlery and Beyond. I thought I placed it with you all. …I thought I ordered the Wusthof Gourmet 12 piece knife set with block and I thought it was through you all but I guess it isn't."

The evidence discussed above can be considered without regard to the truth of any assertion made therein, with the exception of the statement in item (6), "I thought I placed it with you all. …I thought I ordered the Wusthof Gourmet 12 piece knife set with block and I thought it was through you all." It is clear from the context that the customer, at that moment, was awakening to the realization of her error. We therefore find that this statement is admissible within the exception for

---

[26] Kohuch Dep., Ex. 10 17 TTABVUE 90-94. The audio recording was also played at the deposition and was transcribed by the court reporter.

Opposition No. 91201666

"[a] statement of the declarant's then-existing state of mind" under Fed. R. Evid. 803(3). The customer's realization of her error follows so immediately upon the state of mind that she describes that her statement should not be disqualified as "a statement of memory." *Id*. However, even if we exclude these statements, the remaining statements, which are not offered for their truth ("I just placed an order … through your store"; "Oh, I guess I didn't.") are admissible evidence of the customer's confusion, as it does not matter which of these inconsistent statements is true.

We find the incidents described above in items (1), (2), (3), (5) and (6) to be probative of actual confusion as to source among the ultimate customers of Applicant and Registrant. The incident described in item (4) is probative of actual confusion within Opposer's trade. Applicant contends that this incident has no probative value because it does not show *consumer* confusion. However, we find that the nature of the confusion shown (*i.e.*, confusion as between the websites of the parties) is relevant to the issue of likelihood of confusion in this case, because both parties provide their retail services through websites, and online contacts with customers are an important factor in the parties' businesses.[27]

Applicant argues that the amount of confusion shown by Opposer is *de minimis*; and argues that so little confusion, over the course of nine years of co-existence in an environment in which "the opportunity for actual confusion to exist … is high," should be taken as "evidence that confusion itself is not likely to occur in

---

[27] We have given no consideration to the incident described in Beltrami Dep. Ex. 6, 17 TTABVUE 55-56.

Opposition No. 91201666

the future…."[28] We are not persuaded to interpret the evidence as Applicant suggests. Section 2(d) does not require a showing of actual confusion, but only likelihood of confusion. In that connection, we have often noted that "[i]n general, evidence of actual confusion is notoriously difficult to come by." *General Mills Inc. v. Fage Dairy Processing Industry SA*, 100 USPQ2d 1584, 1604 (TTAB 2011). Moreover, the Federal Circuit has said that "A showing of actual confusion would of course be highly probative, if not conclusive, of a high likelihood of confusion." *Majestic Distilling Co.*, 65 USPQ2d at 1205. Accordingly, we find that the factor of actual confusion favors a finding of likelihood of confusion.

**F.     Applicant's good faith adoption of its mark.**

Finally, we note Applicant's argument that it "did not set out to register a service mark that is similar to [Opposer's] registered mark" and that "[t]here is no evidence of record of a malicious intent on the part of [Applicant]."[29] Applicant's good faith "does very little to obviate a finding of likelihood of confusion because it is expected that applicants are acting in good faith."     *Mag Instrument Inc. v. Brinkmann Corp.*, 96 USPQ2d 1701, 1713 (TTAB 2010). *See also J & J Snack Foods Corp. v. McDonald's Corp.,* 932 F.2d 1460, 18 USPQ2d 1889, 1891 (Fed. Cir. 1991) ("Whether there is evidence of intent to trade on the goodwill of another is a factor to be considered, but the absence of such evidence does not avoid a ruling of likelihood of confusion.") Accordingly, Applicant's good faith is a neutral factor in our analysis.

---

[28] Applicant's brief at 23-24, 24 TTABVUE 29-30.

[29] Applicant's brief at 19, 24 TTABVUE 25.

Opposition No. 91201666

**IV.** **Conclusion**.

We have considered all of the evidence of record relevant to the *du Pont* factors and all arguments of the parties, including those not specifically discussed herein. The parties' services are identical and would travel through the same channels to the same classes of customers. Their marks are similar in structure and meaning. The marks are partly similar in sound, and the differences that have the potential to distinguish the marks are not visually salient. There is no evidence that customers have been exposed to similar marks in use in the marketplace. Finally, there is credible evidence of actual confusion relating to the parties' marks. We therefore find that Applicant's mark so resembles Opposer's registered mark as to be likely to give rise to confusion, mistake or deception as to the source of Applicant's services. We do not reach Opposer's claims insofar as they are based on Opposer's pleaded common law rights in the mark CUTLERY AND MORE.

**Decision:**    The opposition is sustained.